**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **WILMER RAMIREZ DOMINGO** | **CASE NO. 1:25-CV-01562 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SHAD M RICE ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING

Before the Court is a Report and Recommendation by the Magistrate Judge [Doc. No. 16], recommending the Court order Petitioner to have a bond hearing or grant the Petition for Writ of Habeas Corpus ("Habeas Petition") filed by Petitioner, Wilmer Ramirez-Domingo ("Petitioner"). Respondents filed objections [Doc. No. 17] to the Report and Recommendation, and Petitioner filed a reply [Doc. No. 18].

### I. Background

On September 18, 2012, Petitioner, a Guatemalan native and citizen, entered the United States with his mother as a minor pursuant to a grant of humanitarian parole under the Immigration and Nationality Act ("INA"), § 212(d)(5).[1] On September 18, 2013, the grant of parole expired.[2] In May 2024, United States Citizenship and Immigration Services ("USCIS") approved Petitioner's I-360 form,

[1] [Doc. No. 1, ¶¶ 2, 109].
[2] [Doc. No. 12-1, p. 2].

and Petitioner was granted Special Immigrant Juvenile ("SIJ") status and deferred action.[3] On August 24, 2025, Petitioner was arrested on a domestic assault charge.[4] Following the arrest, Petitioner was placed into the custody of Immigration and Customs Enforcement ("ICE").[5] The charge was dismissed two days later.[6] On August 25, 2025, the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA"), charging him as inadmissible under 8 U.S.C. §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I).[7] Petitioner sought a custody redetermination, and on September 23, 2025, the Immigration Judge denied Petitioner's redetermination as the court lacked jurisdiction.[8] Petitioner challenged the grounds of inadmissibility by providing his I-94 parole stamp and an I-360 approval notice, and on October 9, 2025, the Immigration Judge found the grounds charged not inadmissible and dismissed the NTA without prejudice.[9] On January 9, 2026, Respondents terminated Petitioner's deferred action.[10] Respondents appealed the NTA dismissal decision on June 12, 2026, to the Board of Immigration Appeals ("BIA"), and the appeal remains pending.[11] Petitioner has remained detained since August 24, 2025.

On September 5, 2025, the BIA issued a precedential decision, in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), that affirmed the July 8, 2025, interim

---

[3] [Doc. No. 1, ¶ 117].
[4] [Id. at ¶ 119].
[5] [Id. at ¶ 121].
[6] [Id. at ¶ 120].
[7] [Doc. No. 12-1, p. 4].
[8] [Doc. No. 12-3].
[9] [Doc. No. 12-4].
[10] [Doc. No. 5-1].
[11] [Doc. No. 12-5].

policy which proclaimed that any person who crossed the border unlawfully is no longer eligible for release on bond. On October 17, 2025, Petitioner filed the Habeas Petition.[12] On February 6, 2026, while the Habeas Petition was pending, the Fifth Circuit affirmed that decision. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026). Petitioner argues that regardless of what statute he is detained under presently, his as-applied Fifth Amendment due process claim remains, as he has been imprisoned "for nearly eleven months without any individualized custody determination."[13] Petitioner further makes claims under the *Accardi* doctrine and the Administrative Procedure Act ("APA").[14]

On August 17, 2026, the Magistrate Judge issued a Report and Recommendation, advising the Court to provide Petitioner with a bond hearing or release him from detention because Petitioner is entitled "to more process than he received."[15] Respondents objected to the conclusion.[16]

The parties briefed the issue, and it is ripe for ruling.

## II. Law and Analysis

### A. Writ of Habeas Corpus Standard

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. "[A]bsent suspension, the writ of habeas corpus remains available to

[12] [Doc. No. 1].
[13] [Doc. No. 15, p. 4].
[14] [Doc. No. 1, p. 58].
[15] [Doc. No. 16, p. 9].
[16] [Doc. No. 17].

every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). "'It is well established" that these protections also apply to aliens. *See Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Congress authorizes district courts to grant "writs of habeas corpus . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). For the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

**B. Analysis**

**1. 8 U.S.C. § 1225 v. 8 U.S.C. § 1226**

Initially, Petitioner argued that he should be detained under § 1226 because historically, "§ 1225(b)(2)(A) did not apply to individuals like the Petitioner who previously entered and are now residing in the United States."[17] Respondents argued that the "two-year physical presence requirement does not excuse an applicant from mandatory detention under § 1225 . . . but only determines whether the applicant will be subject to expedited removal . . . or subject to standard removal proceedings."[18]

As Petitioner acknowledges in his reply, on February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been

[17] [Doc. No. 1, ¶ 18].
[18] [Doc. No. 5, p. 9].

present in the United States for many years.[19] *See Buenrostro-Mendez*, 166 F.4th at 502. The statute states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). As the Fifth Circuit holds, any unlawful alien present in the country is an "applicant for admission" and subject to § 1225(b)(2)'s broad sweep. *Buenrostro*-Mendez, 166 F.4th at 502. Thus, *Buenrostro-Mendez* governs Petitioner's detention, and accordingly, he is not statutorily entitled to a bond hearing.

**2. Due Process**

Petitioner claims that the Due Process Clause entitles him to a bond hearing. In *Dzheison Ford v. Timothy Ducote, et al.*, No. 3:20-cv-1170, 2020 WL 8642257, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States,

[19] [Doc. No. 15].

> 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.

In *Demore v. Kim*, Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. 538 U.S. 510 (2003). Like *Ford*, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. *Id.* at 523. Also, like *Ford*, Kim asked for an individualized bond hearing, which was not authorized under the statute. *Id.* at 515. Both the district court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. *Id.* at 510. In reversing the district court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights. *Id.* at 531.

Also, like *Ford*, *Kim* relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." *Kim*, 538 U.S. at 528. In *Zadvydas*, two aliens were held pending removal after final order of deportation. *Zadvydas*, 533 U.S. at 678. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. § 1231(a). *Id.* The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id.* at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported.

*Id*. at 702. And as applied in *Ford*, if a petitioner's detention is neither "indefinite" nor "potentially permanent," their due process rights are not violated. *Ford*, 2020 WL 8642257 at *3. *See also Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process."). Similar to *Ford*, Petitioner's detention is not indefinite or potentially permanent. There is an appeal pending before the BIA concerning his NTA.[20] Because the appeal is still pending, the claim has not been fully adjudicated. Additionally, Petitioner does not have a final order of removal and is thus not subject to *Zadvydas* protections at this time. Accordingly, the Court finds no basis for granting relief on this claim and therefore denies it.

### 3. Procedural Due Process

Additionally, Petitioner claims that his nearly eleven-month detention without an individualized hearing violates due process.[21] Not so. At the outset, the Court acknowledges the recent Fifth Circuit decision in *Sosnava Rodriguez v. Ortega*, expressly stating that immigration detainees are entitled to a bond hearing within 90 days of detention. 180 F.4th 702 (5th Cir. 2026). However, on July 10, 2026, the Fifth Circuit ordered an *en banc* rehearing of the case on its own motion and vacated the panel opinion, rendering it legally ineffective. *See Sosnava Rodriguez*, No. 26-50183, 2026 WL 2014647, at * 1 (5th Cir. July 10, 2026). Thus, without binding

---

[20] [Doc. No. 12-5].
[21] [Doc. No. 15, p. 5].

precedent, the Court proceeds as it normally would until a higher court provides further guidance.

The Court, in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), held that "No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" *Id*. (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon v. Burch*,

494 U.S. 113, 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty ....").

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above weighs in Petitioner's favor as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To reiterate, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Residing in the United States for approximately 12 years, Petitioner established a liberty interest. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not). According to Petitioner, his detention and potential removal prevent him from pursuing lawful permanent resident status, for which he is eligible to apply as an SIJ beneficiary. However,

Petitioner has always understood that his SIJ classification did not itself confer lawful immigration status or authorize his continued presence in the United States.

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—leans in Respondents' favor. Petitioner does not offer any reason why not providing process to him before he was detained—i.e., before the Government terminated his liberty interest—risked error. Respondents detained Petitioner following his arrest on a domestic-related charge. Although that charge was later dismissed, the initial detention was lawful. Respondents also provided Petitioner with adequate process following his detention, including service of an NTA, which is currently on appeal before the BIA; the opportunity to respond to Respondents' motions; the opportunity to be heard at a hearing or through motions; the opportunity to present evidence; and the opportunity to appeal, if he so chooses. Petitioner's further contention that he is entitled to bond or a hearing at which he may demonstrate that he is neither a flight risk nor a danger to society fares no better.[22] As explained above, Respondents are statutorily required to detain him under 8 U.S.C. § 1225. Thus, even if an Immigration Judge determined that he was not a flight risk or a danger, Respondents would still detain him instead of bond.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—weighs in the Government's favor. The Government has a significant interest in protecting the community and preventing flight. Although

[22] [Doc. No. 1, ¶¶ 131, 138].

Petitioner was initially detained following a domestic-related incident, even assuming this incident never occurred and he was entitled to pre-deprivation process, requiring the Government to provide advance notice of its intent to detain Petitioner or similarly situated individuals who entered and remained in the United States unlawfully would create a substantial risk of flight or evasion before detention could occur. Accordingly, Respondents have not violated Petitioner's right to procedural due process.

#### 4. Administrative Procedure Act and the *Accardi* Doctrine

Lastly, Petitioner also makes several other claims regarding his SIJ status. Such claims, Petitioner alleges, arise under the APA and the *Accardi* Doctrine.[23]

The APA governs judicial review of administrative adjudications. Under the APA, any person "adversely affected or aggrieved by agency action" is entitled to judicial review of "[a]gency action made reviewable by statute and *final* agency action for which there is no other adequate remedy." 5 U.S.C. §§ 702, 704 (emphasis added). While the reviewing court must "give the agency the benefit of the doubt as to the meaning of its regulation," Section 706(2)(A) authorizes reviewing courts to "hold unlawful and set aside" agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* at § 706(2)(A); *see also Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 377 (1998). Here,

[23] [Id. at ¶¶ 29,30, 48-50].

Petitioner argues that his "detention and removal would render him ineligible for adjustment of status as an SIJ beneficiary in violation of the APA."[24]

In *Braganca v. Tellez*, this Court previously held that deferred action would prevent petitioner's removal. No. 3:25-CV-01845, 2026 WL 1599499, at *3 (W.D. La. June 3, 2026). The Court distinguished deferred action from SIJ status, explaining that SIJ status merely provides a pathway to lawful residency and does not prevent detention or removal while that process is underway. *Id.* at *3. Although Petitioner had been granted deferred action, that protection was later terminated following his arrest; thus, Petitioner is only left with his SIJ status. And SIJ classification does not itself confer lawful immigration status, lawful permanent residence, or immunity from removal proceedings. *See Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018); *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 (3d Cir. 2023). "An approved SIJ petition may provide a basis for seeking adjustment of status when a visa becomes available, but it does not alter the detention authority otherwise applicable under the INA." *Marvin Ulises Rodriguez Guevara v. Eleazar Garcia*, No. 25-cv-01893, 2026 WL 2122880, at *3 (W.D. La. June 24, 2026) (*report and recommendations adopted*). Moreover, as Respondents contend, the APA permits review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. And the APA may apply in the immigration context only where the INA is silent. The INA is not silent here, nor is this a final action.

---

[24] [Id. at ¶ 153].

Pursuant to the *Accardi* doctrine, a court may set aside agency action that is not in compliance with its own regulations or internal procedures. *See Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010). The relevant inquiry is whether Petitioner was deprived of any "rights guaranteed him by the statute or by the regulations issued pursuant thereto." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). "'Regulations with the force and effect of law supplement the bare bones' of federal statutes," and even when given broad discretion, "agencies must follow their own 'existing valid regulations.'" *Damus v. Nielsen*, 313 F. Supp. 3d 317, 335 (D.D.C. 2018) (cleaned up) (quoting *Accardi*, 347 U.S. at 266). It is unclear which rights under the statute or regulations Petitioner contends were violated. As explained above, Respondents are statutorily required to detain Petitioner even with his SIJ classification. Accordingly, this claim also fails.

## III. Conclusion

For these reasons,

**IT IS ORDERED** that the Court **DECLINES TO ADOPT** the Report and Recommendation of the Magistrate Judge [Doc. No. 16].

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that Wilmer Ramirez Domingo's Petition for Writ of Habeas Corpus [Doc. No. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 17th day of September 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE